# UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

**FILED**

OCT 1 7 2017


PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

The single family residence and detached structures
1 Grenado Street
Fort Bragg, North Carolina 28310

Case No. 5:17-MJ-1931

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Eastern____ District of ____North Carolina____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2241(a) | Aggravated Sexual Abuse by Force or Threat |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

On this day, **Jordan Wicks** appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Application for a Search Warrant.

Date: **16 OCT. 2017**

City and state: Raleigh, North Carolina

*Applicant's signature*

Jordan Wicks, Special Agent, U.S. Army CID
*Printed name and title*

*Judge's signature*

James E. Gates, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

IN THE MATTER OF THE SEARCH OF
1 GRENADO STREET
FORT BRAGG, NC 28310

Case No. _____

## AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT

I, Special Agent Jordan Wicks, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. This is an Affidavit in support of a search warrant authorizing the search of **1 Grenado Street, Fort Bragg, North Carolina 28310** (hereinafter, "SUBJECT PREMIESE"). There is probable cause to believe that Damin Marshall (hereinafter referred to as MARSHALL) committed the offense of Aggravated Sexual Abuse, in violation of Title 18, United States Code, Section 2241(a) at SUBJECT PREMISES. This residence is described as a brown single story residence, with a dark red shingled roof, and concrete stairs leading up to the front door of the residence. Directly to the right of the main entry door, under the covered front porch, is the number "1." The location to be searched is more fully described in Attachment A.

2. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that the SUBJECT PREMISES contains evidence that establishes Damin Marshall committed the offense of Aggravated Sexual Abuse, in violation of Title 21 of the United States Code Section 2241(a).

### RELEVANT STATUTE

3. Your affiant submits that this affidavit provides probable cause to believe that Damin Marshall engaged in a violation of federal law, that is:

1



Aggravated Sexual Abuse by Force or Threat:

18 U.S.C. § 2241(a), which provides in part that "Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly causes another person to engage in a sexual act— (1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping; or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both."

4. Further, your affiant submits that this incident took place in a territorial jurisdiction of the United States, to wit the United States Army Installation, Fort Bragg, as defined in 18 U.S.C. §7(9)(A).

**AFFIANT AND EXPERTISE**

5. I am a duly appointed civilian Special Agent (SA) of the United States Army Criminal Investigation Division. Your affiant is currently assigned as a Special Agent with the Fort Bragg CID Office, Special Victims Unit (SVU), and have been so employed since August of 2014. As a civilian Special Agent, I investigate violations of federal law and violations of the Uniform Code of Military Justice (UCMJ).

6. My duties include, but are not limited to, the investigation of violent criminal offenses in which a special victim is involved and there is a nexus to the United States Army.

7. From 2001 to 2005, I was an active duty Security Forces member in the United States Air Force. From 2006 to 2008, I worked as a Narcotics Detective for the Lincoln County Sheriff's Office, Missouri. From 2008 to 2014, I worked as a Detective for the Maplewood Police

2

Department, St. Louis County, Missouri. I have received several thousand hours in advanced law enforcement training. I have personally conducted several thousand local, state, and federal investigations that have resulted in the arrest and conviction of numerous individuals for various criminal violations.

8. This affidavit does not set forth each and every fact known to me concerning this investigation. I have included what I believe are facts sufficient for the present purpose. The information contained in this affidavit is based upon my personal knowledge and investigation, as well as information conveyed to me by other law enforcement agents, such as interviews of victims and witnesses.

## PROBABLE CAUSE

9. On October 13, 2017, at approximately 0309 hours, the Fort Bragg Military Police notified Special Agent (SA) Jessica Mulliken, Fort Bragg CID Office, that an adult female (hereinafter, "Victim"), an active duty service member, reported she was sexually assaulted.

10. On October 13, 2017, at approximately 0425, SA Mulliken and SA Angel Miles arrived at the Womack Army Medical Center and made contact with Victim to conduct a preliminary interview. Victim was awaiting a Sexual Assault Forensic Examination at the time of the interview. Victim informed SA Mulliken and SA Miles of the following:

11. On October 12, 2017, Victim traveled to the residence of 1 Grenado Street, Fort Bragg, North Carolina 28310, to see her husband, Damin Marshall. The address is located within the territory of Fort Bragg Army Base. Victim was not currently residing at the location because the couple was undergoing divorce proceedings, but had returned to the address to provide MARSHALL money and get the copy of MARSHALL's house key.

3

12. Victim stated that, over the course of the last several days, MARSHALL sent her text messages and attempted to solicit her to engage in sexual intercourse "one last time," prior to their divorce and him subsequently moving back to Arizona. Victim stated that she responded to MARSHALL's messages writing that she did not want to have sex with him.

13. While at 1 Grenado Street, Victim states that she was on the kitchen floor playing with their dog when MARSHALL began kissing Victim and grabbed her. Victim stated that she told him "no" at that time. Victim then stated MARSHALL picked her up and carried her against her will to a bedroom. Victim informed the agents that she was fighting MARSHALL, screaming "no," and attempting to grab the walls in an effort to get away. MARSHALL then threw Victim on the bed, got on top of her, removed her pants, and penetrated her vagina with his penis. Victim stated she was crying and yelling "no" during the course of this assault. MARSHALL began strangling Victim with his hand and at one point covered her mouth with his hand.

14. Victim said she was able to push away from MARSHALL by pushing away from him and then landing on the floor. Victim said she was attempting to escape the assault; however, MARSHALL did not stop and then entered her vagina with his penis. Victim stated that MARSHALL, "penetrated really hard and it hurt really bad." During the course of her discussion with law enforcement, Victim was crying at numerous times.

15. In the late afternoon of October 13, 2017, SA David Morton conducted a follow-up interview with Victim at the Fort Bragg CID Office. Victim provided further detail to law enforcement. Victim confirmed the assault began in the kitchen of 1 Grenado Street, Fort Bragg, North Carolina 28310. She stated that, while located in the kitchen, MARSHALL forced himself on top of her and touched her vagina through her outer clothing.

4

16. Victim stated that MARSHALL then carried her to the bedroom while she continued to physically resist him and screaming at him to stop. Victim stated she used her hands and feet to try and prevent the assault and stated she believes she could have scratched the walls with her fingernails while being taken to the bedroom against her will.

17. Once in the bedroom, Victim again stated that MARSHALL threw Victim on the bed, forcibly removing her lower garments, and then forcibly penetrated her vagina with his penis. Victim stated that MARSHALL strangled her and at one point placed one of his hands over her mouth. Victim stated that she fell off the bed and onto the floor while trying to flee from being further sexually assaulted, stating she was kicking and screaming as this occurred.

18. Victim said when she landed on the floor; she attempted to crawl out of the room on her hands and knees. She staeted that MARSHALL got off the bed in an effort to intercept and prevent Victim from leaving, flipped her on her back, and then further forcibly penetrated her vagina with his penis. Victim continued to kick and scream while this occurred and until the assault ended.

19. Victim stated that, after the assault ended, she quickly put on her shorts, leaving her underwear behind, and then fled to the kitchen. Victim obtained her car keys from the kitchen and fled from the residence, later reporting MARSHALL forcibly raped her.

20. On October 13, 2017, at approximately 0720, SA Justin Lane advised MARSHALL of his legal rights. MARSHALL waived his right and agreed to provide a statement without legal counsel present. SA Lane and SA Jordan Wicks then conducted an interview of MARSHALL. During the initial course of the interview with MARSHALL, he confirmed that he did in fact engage in sexual intercourse with Victim.

5

21. MARSHALL initially stated the acts were consensual. Upon further questioning, MARSHALL admitted that he performed sexual acts upon Victim without her consent. MARSHALL provided the following account of what occurred at 1 Grenado Street, Fort Bragg, North Carolina 28310:

22. MARSHALL confirmed that, over the course of the last several days, he had attempted to solicit Victim for sex, prior to their divorce. MARSHALL confirmed that, on October 12, 2017, he was consuming alcohol and was intoxicated when Victim arrived. MARSHALL stated that Victim smelled alcohol and began to search the house to find the alcohol. As she began to search the house, Victim attempted to search a bag that contained the personal sex toys belonging to MARSHALL. MARSHALL took the bag from her and locked it in the trunk of his car outside. After being persuaded by Victim to show him the contents of the bag, he did so, and Victim began making jokes about him having a dildo. According to MARSHALL, he was going to give Victim, "a taste of her own medicine." MARSHALL did not elaborate what he meant by that phrase.

23. While inside of the residence, MARSHALL and Victim began to argue. At some point during the argument, MARSHALL stated that he told Victim to hit him. MARSHALL is approximately 5'10" and 185 lbs. Victim is approximately 5'2" and 115 lbs.

24. Victim began to strike MARSHALL in his chest with both her hands while crying. MARSHALL stated he began to walk backwards while Victim continued to strike him and he subsequently fell on a couch in the living room. MARSHALL stated that he attempted to stand back up, but that Victim pushed his upper chest and they fell on the couch together. MARSHALL stated that while Victim was still crying, he picked her up and forcibly carried her to the bedroom.

MARSHALL stated that during this time Victim continued to strike him, while she repeatedly said "no," "stop," and "I don't want this." While attempting to take her into the bedroom, Victim attempted to prevent entry into the room by using her leg on the doorframe. MARSHALL stated it did not require much force to force her through the doorway, due to him being much larger than she is.

25. Upon entering the bedroom, MARSHALL put Victim on the bed and began to kiss her neck. He used one of his hands to strangle her, where he described her inability to breath and gasping for breath. When asked how her shorts were removed, MARSHALL said that he personally pulled Victim's shorts off her body. MARSHALL described that he heard the stitching in her shorts tear as he did so. MARSHALL stated he attempted to perform oral sex on Victim, while she cried and told him "no" and "stop." MARSHALL said he was only able to get his head down to her thigh, which he stated he kissed, as Victim attempted to get away from him. Attempting to get away from MARSHALL, Victim rolled away and fell on the floor, laying on her back. MARSHALL described how he also partially fell off the bed, hitting the bedroom wall.

26. MARSHALL confirmed Victim was attempting to get away from him when he turned her over onto her stomach with his hands. MARSHALL then pulled his penis out of his pants, through the opening in the front, and penetrated her vagina from behind. According to MARSHALL, Victim was crying and saying "no" and/or "stop" while this was occurring. After ejaculating inside of Victim, MARSHALL stated that he stood up and stated it was then that he realized what he had done was wrong.

27. After the sexual assault ended, MARSHALL stated Victim stood up and put on different clothes that she had found in the room. MARSHALL confirmed Victim was still crying



when she departed the residence. MARSHALL said after the assault, he attempted to contact Victim numerous times by telephone and she did not respond. MARSHALL confirmed this cell phone was currently located within the residence, and is believed to be there at the time of the submission of this affidavit.

28. Victim informed SA Morton that prior to moving out of their residence, several weeks prior, she was sleeping naked in her bed. MARSHALL entered the room and used his cellular telephone to photograph her naked. Victim said she immediately confronted MARSHALL, observed the photograph of her naked on his phone, and told him to delete the picture.

29. Based on this information, SA Wicks asked MARSHALL if he in fact had taken a photograph of Victim naked. MARSHALL confirmed he had previously taken the photograph and informed SA Wicks the photograph, taken without Victim's consent, was located on his cellular device, which was currently located within 1 Grenado Street, Fort Bragg, North Carolina 28310.

## CONCLUSION

30. Based on the evidence noted above, there is probable cause to believe that Damin Marshall committed the offense of Aggravated Sexual Abuse, in violation of Title 18, United States Code, Section 2241(a), within the residence of 1 Grenado Street, Fort Bragg, North Carolina 28310, a residence located within Fort Bragg Army Base.

31. For the reasons stated above, I believe there is evidence of the commission of this offense within this residence, which includes, but is not limited to, MARSHALL's cellular telephone, clothing worn by MARSHALL and Victim during the offense, bedding and sheets, damage to the hallway wall and bedroom doorframe, as well as biological, serological, and forensic

evidence.

32. Therefore, your Affiant respectfully requests that this Court issue a search warrant for 1 Grenado Street, Fort Bragg, North Carolina 28310, and to authorize the seizure of the items described in Attachment B which constitute fruits, evidence and instrumentalities of violations of Title 18, United States Code, 2241(a).

Special Agent Jordan Wicks
U.S. Army Criminal Investigation Command

On this **16** day of October 2017, Jordan Wicks appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Affidavit.

JAMES E. GATES
United States Magistrate Judge

## ATTACHMENT A

### Property To Be Searched

### 1 Grenado Street, Fort Bragg, North Carolina 28310

The property to be searched is located in Fort Bragg, within the Eastern District of North Carolina. 1 Grenado Street, Fort Bragg, North Carolina 28310, is described as a brown single story residence, with a dark red-shingled roof, and concrete stairs leading up to the front door of the residence. Directly to the right of the main entry door, under the covered front porch, is the number "1."

The property to be searched includes only the property, including any exterior buildings and containers located on the property.



# ATTACHMENT B

## Property to be Searched And/Or Seized

This warrant authorizes (i) the search of the property identified in Attachment A for only the following and (ii) authorizes the seizure of the items listed below only to the extent they constitute the following:

(a) evidence of violations of Title 21, United States Code, Section 2241(a) ("subject violations"); or

(b) any item constituting contraband due to the subject violations, fruits of the subject violations, or other items possessed whose possession is illegal due to the subject violations; or

(c) any property designed for use, intended for use, or used in committing any subject violations.

Subject to the foregoing, the items authorized to be seized include the following:

1. Clothing worn by Damin Marshall and Amanda Herrera immediately before, during, and after the sexual assault;

2. Bedding, sheets, pillow cases, covers, blankets, mattress tops, and carpeting, on which physical, biological, or serological evidence may be found;

3. Sections of walls, door frames, or other sections of the structure of the home, which were damaged during the sexual assault of Amanda Herrera;

4. The cellular telephone device of MARSHALL, related electronic devices used to facilitate the electronic communication between MARSHALL and Amanda.